UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
(Miami Division)

| | |
|---|---|
| RAFAEL "RAFA" VERGARA HERMOSILLA,<br><br>          Plaintiff,<br><br>v.<br><br>THE COCA-COLA COMPANY, a Delaware Corporation,<br><br>          Defendant. | Case No. 10-21418-CIV-MOORE/SIMONTON |

## SEPARATE STATEMENT OF UNDISPUTED MATERIAL FACTS IN SUPPORT OF MOTION OF DEFENDANT THE COCA-COLA COMPANY FOR SUMMARY JUDGMENT

1. In 2009, while preparing its worldwide marketing campaign for the World Cup soccer tournament, The Coca-Cola Company ("Coca-Cola") became aware of the song "Wavin' Flag" by the artist K'naan and chose the song as the music for the marketing campaign. Second Declaration of Joseph Belliotti ("Belliotti Decl.") (Ex. 1), ¶ 2.

2. Coca-Cola asked K'naan to create new versions of the musical composition and sound recording of "Wavin' Flag" that would reflect themes of teamwork and national pride more befitting a sporting event such as the World Cup. Belliotti Decl. (Ex. 1), ¶ 3.

3. Because OctoScope Music LLC ("OctoScope"), owned the copyright in the sound recording of "Wavin' Flag" and possessed the exclusive rights to K'naan's recording services, Coca-Cola, OctoScope, and K'naan entered into an agreement (the "Coca-Cola-OctoScope Agreement") under which OctoScope granted permission for K'naan to create a new sound recording by combining existing elements of the "Wavin' Flag" sound recording with K'naan's newly created material to create a new sound recording entitled "Wavin' Flag (Coca-Cola Celebration Mix)" (the "Celebration Mix Recording"). Belliotti Decl. (Ex. 1), ¶ 4, Ex. 1.

4. Pursuant to the Coca-Cola-OctoScope Agreement, Coca-Cola was the sole owner of the Celebration Mix Recording, including the copyright therein. Belliotti Decl. (Ex. 1), Ex. 1, ¶¶ 1(a) and 3(a).

5. Coca-Cola simultaneously granted a nonexclusive license back to OctoScope, allowing OctoScope to release the Celebration Mix Recording as a single, including through online retailers such as iTunes, or include the Celebration Mix Recording on new versions of K'naan's album *Troubadour*. Belliotti Decl. (Ex. 1), Ex. 1, ¶¶ 6(e) and 8(a).

6. Because neither Coca-Cola nor OctoScope owned the musical composition "Wavin' Flag," the rights in the new musical composition created by K'naan and embodied in

1

the Celebration Mix Recording (the "Celebration Mix Musical Composition") were governed by an agreement entered into on or about October 1, 2009 between Coca-Cola and Sony/ATV Music Publishing LLC ("Sony/ATV"). Belliotti Decl. (Ex. 1), ¶ 5, Ex. 2.

7.  Pursuant to this agreement, Coca-Cola was to be a 5% co-owner of the Celebration Mix Musical Composition – in part because Coca-Cola contributed substantive creative content including the initial drum beat and non-lyrical chant at the beginning of the song – but subject to the restriction that Coca-Cola could not "authorize anyone to reproduce or use the [Celebration Mix Musical Composition] … without first consulting with [Sony/ATV] and obtaining [Sony/ATV's] express written consent, with the understanding that such consent may be withheld for any reason." Belliotti Decl. (Ex. 1), Ex. 2, ¶¶ 1, 3.

8.  The Coca-Cola-OctoScope Agreement provided that Coca-Cola would have the right to arrange for the creation of "local versions" of the Celebration Mix Recording to be produced "for different countries in which a local artist's performance is included on a secondary, supportive basis … together with the primary, featured performance of [K'naan]." Belliotti Decl. (Ex. 1), Ex. 1, ¶ 6(c).

9.  Coca-Cola, K'naan and OctoScope's rights with regard to these local, derivative versions of the Celebration Mix Recording were to be the same as the original Celebration Mix Recording, including Coca-Cola possessing full ownership of the copyright in the sound recording of any local version. Belliotti Decl. (Ex. 1), Ex. 1, ¶¶ 6(e) and 8(a).

10. To create the Spanish-language version of the Celebration Mix Recording (the "Spanish Celebration Mix"), Coca-Cola contacted Jose Puig, who at the time was Vice-President of Marketing for Universal Music Latin America. Declaration of Jose Puig ("Puig Decl.") (Ex. 2), ¶¶ 2-3.

2

7448093v2

11. Rafael Vergara was recommended to Puig as a potential producer of the Spanish-language version of the Celebration Mix Recording (the "Spanish Celebration Mix Recording"). Puig Decl. (Ex. 2), ¶ 3.

12. According to Vergara, on November 17, 2009, Puig and Rafael Artero of Universal Music Publishing Group ("UMPG") called him on the phone and engaged him "to adapt my work from what already existed in English..." Deposition of Rafael Vergara ("Vergara Depo.") (Ex. 3) 90:15-20.

13. Vergara testified that on that call, Artero told him that he was "going to carry out the normal procedure as he would in any song in order to claim my rights and register the work." Vergara Depo. (Ex. 3) 86:20-87:21.

14. Vergara says he "had never undergone a similar situation" but claims he assumed that he could obtain "rights" in the adaptation because "whenever I have requested my rights there has always been a dialogue with the other party and an agreement has been reached without any problem." Vergara Depo. (Ex. 3) 88:25-89:16.

15. Vergara admits, however, that he only had *one* prior experience in creating an adaptation of an existing musical composition – in 2008, when he adapted an English-language composition called "Words" that was owned by UMPG. Vergara Depo. (Ex. 3) 255:2-256:19; Vergara Depo. Ex. 39 (Ex. 4).

16. In that case, where UMPG owned the underlying work and thus (unlike in this case) had the power to convey ownership or a writer's share of the derivative work, Vergara and his wife were each granted a 6.25% "adaptor's share" (*i.e.*, 6.25% of the "writer's share") – *not any copyright ownership* – in the adaptation. Vergara Depo. Ex. 39 (Ex. 4), ¶¶ 3-4.

3

17. Vergara understood that to own any copyright in his adaptation, he needed the permission of the owner of the copyright in the underlying composition. Vergara Depo. (Ex. 3) 91:7-16.

18. Vergara never told Artero to "claim" any particular percentage in his adaptation – he understood that this issue "would have to be negotiated with the owner of the underlying copyright." Vergara Depo. (Ex. 3) 92:5-19.

19. On the evening of November 17, 2009, Vergara translated certain lyrics of the Celebration Mix Musical Composition from English to Spanish which he embodied in a Spanish or "Spanglish" version (the "Spanish Celebration Mix Musical Composition"). Vergara Depo. (Ex. 3) at 64:9-17, 66:1-67:7; Vergara Depo. Ex. 43 (Ex. 5).

20. To assist Vergara in his work, Puig gave him a copy of lyrics of the Celebration Mix Musical Composition translated into Spanish which had been previously prepared by another writer for Coca-Cola. Vergara Depo. (Ex. 3) 15:13-14; Vergara Depo. Ex. 41 (Ex. 6).

21. Vergara listened to the English version of the song and reviewed the English lyrics and the Spanish translation prepared by the other writer, after which he "created Spanish lyrics that tried to convey the same message while also fitting the preexisting melody of the song." Vergara Depo. (Ex. 3) 47:25-49:7.

22. When translating the English lyrics into Spanish, Vergara understood that his assignment required him to select Spanish words that would fit the Celebration Mix Musical Composition's pre-existing melody and have the same number of syllables and beats as their English-lyric counterparts. Vergara Depo. (Ex. 3) 40:9-42:4.

23. In some places this led to a literal translation, such as the first line of the song, "in the streets," being literally translated into "en las calles" in Spanish, while in others, Vergara

4

"respect[ed] the concept of the lyrics in the original work," but made some changes "in order for the lyrics to work in Spanish." Vergara Depo. (Ex. 3) 39:2-17, 20:1-8.

24. Vergara testified that each stanza of the final version of the translated lyrics maintained at least the same concept and feel as the corresponding stanza in English, regardless of whether some words were changed to fit the melody and rhythm of the song. Vergara Depo. (Ex. 3) 49:12-64:7.

25. Vergara understood that his Spanish lyrics were to be merged with other elements, such as a melody and English lyrics written by K'naan, and that any re-arrangement he made to such other elements of the Celebration Mix Musical Composition needed to be approved and accepted by K'naan's representatives. Vergara Depo. (Ex. 3) 25:19-26:8, 102:8-107:12, 190:24-194:20; Vergara Depo. Ex. 58 (Ex. 7); Vergara Depo. Ex. 59 (Ex. 8).

26. The following morning, Vergara sent Spanish lyrics to Puig, along with a "demo" recording combining his Spanish lyrics with the pre-existing Celebration Mix Recording "so that [Puig] would understand how the song went..." Vergara Depo. (Ex. 3) 92:21-95:12.

27. Vergara understood that his translation was being presented to Coca-Cola at a November 18, 2009 meeting. Vergara Depo. (Ex. 3) 83:17-84:19, 274:13-18.

28. Following that meeting, Puig confirmed to Vergara that Coca-Cola had approved the lyrics and that Vergara was to produce the Spanish Celebration Mix Recording, the Spanish lyrics of which would be performed by well-known Spanish recording artist David Bisbal. Vergara Depo. (Ex. 3) 84:10-19.

29. Throughout that process, Vergara was aware that "K'naan and his representatives were continuing to work on the English version even as [he was] working on the Spanish version." Vergara Depo. (Ex. 3) 25:19-24.

30. Further, when changes were made to the English version, Vergara was required to make changes to the Spanish version as well. Vergara Depo. (Ex. 3) 26:1-8.

31. Vergara admits that his production work on the Spanish Celebration Mix Recording was, as is customary, performed as a work-for-hire. Vergara Depo. (Ex. 3) 186:6-19, 187:18-25.

32. In his recently-filed copyright registration certificate, Vergara claims only a copyright interest in the Spanish Celebration Mix Musical Composition, and, even as to that composition, only the Spanish lyrics -- not any of the melody, the English lyrics, the arrangement, or any other element. RAFA0001 (Ex. 9).

33. On January 25, 2010, on Vergara's behalf, UMPG commenced a process by which it contacted the copyright owners of the Celebration Mix Musical Composition and try to negotiate an adaptation share for him. Vergara Depo. (Ex. 3) 196:20-24; Vergara Depo. Ex. 61 (Ex. 10); Cardona Depo. (Ex. 11) 46:20-23, Cardona Depo Ex. 96 (Ex. 12).

34. This was not a customary process, as the rights UMPG was seeking on Vergara's behalf would not have resulted in any economic benefit to UMPG. Rather, UMPG interceded on Vergara's behalf because Artero had told Vergara UMPG would do so in the November 17 telephone call. Cardona Depo. (Ex. 11) 11:25-12:6, 38:19-39:11, 73:8-19, 74:10-75:18.

35. Vergara understood that obtaining even an "adapter's share" -- which would not confer on him a copyright interest, but only a stream of income -- would require negotiation with the owners of the copyright in the Celebration Mix Musical Composition and that UMPG did not own any part of the underlying composition and did not have the power to compel any other entity to give up a percentage of its ownership share to Vergara. Vergara Depo. (Ex. 3) 199:8-24, 201:15-20, 202:9-16; Cardona Depo. (Ex. 11) 74:14-22.

6

36. Vergara understood that various entities owned interests in the Celebration Mix Musical Composition, with the largest share owned by Sony/ATV. Vergara Depo. (Ex. 3) 201:6-202:3; Vergara Depo. Ex. 62 (Ex. 13).

37. Over the next month, Olga Cardona, a UMPG employee, "did everything [she] could in [her] power" to obtain an adapter's share for Vergara. Cardona Depo. (Ex. 11) 26:22-25.

38. The week of February 24, 2010, the Spanish Celebration Mix Recording was released through iTunes Mexico and Vergara's wife Vicky Echeverri contacted Cardona to inquire about the status of obtaining an adapter's share in the song for Vergara. Vergara Depo. Ex. 66 (Ex. 14).

39. In response, Cardona sent Echeverri and Vergara a detailed email in which she explained the current ownership interests and that while she was trying to obtain an adaptor's share for Vergara, she could not guarantee anything and that in her experience adaptors such as Vergara are not typically granted a share. Vergara Depo. (Ex. 3) 226:19-227:12; Vergara Depo. Ex. 67 (Ex. 15).

40. On February 26, 2010, UMPG's request for an adaptor's share for Vergara in the Spanish Celebration Mix Musical Composition was denied by Sony. Cardona Depo. (Ex. 11) 84:16-22.

41. That same day, Cardona informed Vergara of Sony/ATV's denial, at which time Vergara became upset and for the first time raised the possibility of bringing a lawsuit claiming a copyright interest in the Spanish Celebration Mix Musical Composition. Cardona Depo. (Ex. 11) 17:7-18:10.

7

42. By this time, Coca-Cola had already expended significant time and resources preparing the song for use in connection with Coca-Cola's promotional campaign in conjunction with the World Cup. Declaration of Jesús Ferreira ("Ferreira Decl.") (Ex. 16), ¶¶ 1-10.

43. In early March 2010, Cardona asked Sony/ATV to reconsider its position, but Sony/ATV refused. Cardona Depo. (Ex. 11) 25:20-25.

44. After learning from Cardona that her renewed request on his behalf for an adapter's share had been refused by Sony/ATV, on March 4, 2010, Vergara raised the possibility that he would contest OctoScope and Coca-Cola's rights to use of the Spanish Celebration Mix Musical Composition. Cardona Depo. (Ex. 11) 17:20-25, 92:5-13; Vergara Depo. (Ex. 3) 229:5-13; Vergara Depo. Ex. 69 (Ex. 17).

45. March 4, 2010 was the first time Vergara told anyone that if he did not receive an adapter's share they would have to stop using the Spanish Celebration Mix Recording. Vergara Depo. (Ex. 3) 221:11-21, 229:5-21; Vergara Depo. Ex. 69 (Ex. 17).

46. On March 4, 2010, Puig learned of Vergara's threat, and called Vergara. Vergara Depo. (Ex. 3) 229:22-230:13; Puig Decl. (Ex. 2), ¶ 4.

47. During Puig's March 4 conversation with Vergara, Puig reminded Vergara of the parties' original agreement on November 17, 2010, and told Vergara that if he was a man of honor he should stick to what was agreed during that initial conversation. Puig Decl. (Ex. 2), ¶ 4.

48. Following this conversation, Vergara sent an email to Puig, also on March 4, 2010 which stated (in Spanish – the below is a certified English translation):

> "Hi Jose,
>
> Regarding our previous conversations and today's, I would like to confirm the terms discussed for both of us.

> In the first place, as you know, my job with Universal Publishing is a creative work, and that is the basis of my services.
>
> When you asked me to adapt the theme Waving Flag, we always left an open door to request a percentage from the original authors for the adaptation. Had I known that there was no such possibility from the beginning, I would never had undertaken this adaptation job. Also. I want to ratify that the adaptation had nothing to do with the work I did later on as producer.
>
> Even so, these past weeks we have tried to reach the original authors, but no one has been willing to acknowledge our adaptation and the resulting unique version.
>
> Regrettably, the original authors, being creative as they are. won't acknowledge my contribution to the official version of Waving Flag Spanish Celebration. This is unfair and illegal. It must be that this is the first time they produce something important, because we had never faced something like this with any other adaptation.
>
> But, since I am a man of my word and an honorable person not driven by financial motives, my only demand will be that my credits as producer and adapter of the theme in Spanish are respected (that is, any time that the name of any author of this version appears, my name as adapter should also appear), and, of course, the production credits indicated in the invoice covering this production, whose breakdown you will see below.
>
> As for the adaptation, you may do a Work for Hire with no monetary compensation. I think that the legal amount is one dollar. I hope this clarifies what my job was and my goodwill from the beginning.
>
> Regards, Rafa."

Vergara Depo. (Ex. 3) 232:22-235:9; Vergara Depo. Ex. 70 (Ex. 18).

49. In reliance on Vergara's March 4, 2010 email, Universal Music Mexico executed a written agreement with Coca-Cola later on March 4, 2010. Puig Decl. (Ex. 2), ¶ 6, Ex. 2.

50. On March 5, 2010, Puig responded to Vergara's email confirming their agreement and informing him that written contracts reflecting their agreement would be sent for Vergara's signature. Vergara Depo. (Ex. 3) 235:10-15.

51. Draft agreements were sent to Vergara on March 5, 2010. Puig Decl. (Ex. 2), ¶ 7, Exs. 3 and 4.

9

52. Due to an internal error, and because Puig had only forwarded the draft agreements to Vergara but had not read them, the drafts sent to Vergara inadvertently were inconsistent with certain terms of Vergara's March 4 email. Deposition of Jose Puig ("Puig Depo") (Ex. 19) 81:14-83:6; Puig Decl. (Ex. 2), ¶ 8.

53. After seeing the agreements, on March 8, 2010, Vergara attempted to rescind his March 4 email to Puig. Vergara Depo. (Ex. 3). 237:21-238:15; Puig Decl. (Ex. 2), ¶ 8, Ex. 5.

54. Puig promptly responded that the inconsistencies were merely an error and the drafts would be amended to conform to all of the terms of Vergara's March 4 email. Puig Decl. (Ex. 2), ¶ 9, Ex. 5.

55. In spite of the unintentional omissions in the draft agreements, K'naan's album *Troubadour*, which included the Spanish Celebration Mix Recording, was first released in Mexico on or about February 25, 2010 and included the following credits for the Spanish Celebration Mix Recording: "David Bisbal's vocals & voice arrangements were mixed and spanish lyrics adapted by Rafael Vergara." Puig Decl. (Ex. 2), ¶ 10, Ex. 6.

56. Puig had already sent this credit information to the record label's production department back in December 2009, long before his March 2010 email exchanges with Vergara and shortly after Vergara completed his adaptation project. Puig Decl. (Ex. 2), ¶ 10, Ex. 7.

57. By March 4, 2010, Coca-Cola had already relied on his transfer of his copyright interest in the Spanish Celebration Mix Recording by, among other things: (1) releasing the song on national radio in December 2009, (2) producing and releasing a music video in January 2010, and (3) expending significant time and resources preparing audio and video incorporating the song for use in potential Coca-Cola Mexico advertisements and Coca-Cola worldwide advertisements to be released in conjunction with the World Cup. Ferreira Decl. (Ex. 16), ¶ 10.

7448093v2

Respectfully Submitted,

THE COCA-COLA COMPANY

By its attorneys,

s/Sanford L. Bohrer
Sanford L. Bohrer (FBN 160643)
s/Brian A. Briz
Brian A. Briz (FBN 657557)
HOLLAND & KNIGHT LLP
701 Brickell Avenue, Suite 3000
Miami, Florida 33131
Tel: (305) 374-8500
Fax: (305) 789-7900
Email: sandy.bohrer@hklaw.com
Email: brian.briz@hklaw.com

– and –

Gordon P. Katz*
HOLLAND & KNIGHT LLP
10 St. James Avenue
Boston, MA 02116
Tel: (617) 523-2700
Fax: (617) 523-6850
Email: gordon.katz@hklaw.com

Vernon M. Strickland*
HOLLAND & KNIGHT LLP
1201 West Peachtree Street, Suite 2000
One Atlantic Center
Atlanta, GA 30309
Tel: (404) 817-8500
Fax: (404) 881-0470
Email: vernon.strickland@hklaw.com

* Admitted *Pro Hac Vice*

**CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that on December 17, 2010, I electronically filed the foregoing document with the Clerk of Court using CM/ECF. I also certify that the foregoing document is being served this day on all counsel of record on the attached Service List in the manner specified, either via transmission of Notices of Electronic Filing generated by CM/ECF or in some other authorized manner for those counsel or parties who are not authorized to receive electronically Notices of Electronic Filing.

s/Brian A. Briz

7448093v2

## SERVICE LIST

James M. Kaplan, Esq.
james.kaplan@kaplanzeena.com
William Zeena, Jr., Esq.
william.zeena@kaplanzeena.com
Michael C. Foster, Esq.
michael.foster@kaplanzeena.com
KAPLAN ZEENA LLP
*Attorneys for Plaintiff*
2 South Biscayne Blvd.
One Biscayne Tower
Suite 3050
Miami, FL 33131
Tel: (305) 530-0800
Fax: (305) 530-0801

Service via transmission of Notices of Electronic Filing generated by CM/ECF

7448093v2