**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**

**CASE NO. 10-21418-CIV-MOORE/SIMONTON**

**RAFAEL "RAFA" VERGARA**
**HERMOSILLA,**

            **Plaintiff**

**v.**

**THE COCA-COLA COMPANY,**

            **Defendant.**
_____/

**ORDER ON PLAINTIFF'S MOTION TO COMPEL AND**
**ON DEFENDANT'S EMERGENCY MOTION TO STRIKE**
**DEPOSITION NOTICE AND FOR  PROTECTIVE ORDER**

        Presently pending before the Court are Plaintiff's Motion to Compel Production

and Further Responses (DE # 91) and Defendant's Emergency Motion to Strike Plaintiff's

Second Amended Notice of Taking Deposition and Motion for Protective Order On

Plaintiff's Second Amended Notice of Taking Deposition (DE # 92).  All discovery

motions in this case are referred to the undersigned Magistrate Judge (DE # 7).  The

motions have been fully briefed (DE ## 94, 101, 106, 108, 110).  For the reasons stated

below, Plaintiff's motion is granted and Defendant's motion is denied.

        I.  <u>Background</u>

        Plaintiff is proceeding under a five-count Complaint.  In Court I he alleges

copyright infringement, in violation of 17 U.S.C. 501, *et seq*; in Counts II and III, he asks

for a constructive trust, and requests an accounting; and in Count IV, he seeks a

preliminary and a permanent injunction against Defendant (DE # 1).[1]  Specifically,

_____

        [1] **On August 17, 2010, the District Court granted in part Defendant's Motion to**
**Dismiss and dismissed Court V which alleged a claim under violation of the Florida**
**Deceptive and Unfair Trade Practices Act, Fla. Stat. 501.201 *et seq* (DE # 65 at 6-7).**

Plaintiff contends that he is a successful songwriter, singer and producer, currently living and working in this District.   He claims that on the evening of November 17, 2009, he was contacted by the General Manager of Universal Music Mexico, Jose Puig, who asked him to immediately compose Spanish lyrics for a musical work called "Wavin' Flag", by the artist K'naan.  Puig told Plaintiff that the Spanish lyrics were necessary for a pitch to Defendant, which was seeking to license a musical work a marketing campaign related to the FIFA World Cup, that the theme of the lyrics was "Wavin' the Flag of Coca Cola", that the meeting with Defendant was scheduled for the next morning, November 18, 2009, and that the lyrics had to be provided prior to the meeting.

Plaintiff went on to allege that Defendant needed Spanish lyrics because of the widespread popularity of the FIFA World Cup in Spain and in Latin America.  Plaintiff began to work immediately and ascertained that translating the English lyrics of "Wavin' Flag" to Spanish was nonsensical given the rhythmic and melodic structure of the work. Thus, Plaintiff adapted and rewrote "Wavin' Flag" to fit his Spanish lyrics.  In the early morning November 18, 2009, Plaintiff completed his work and transmitted it to Puig.

On the afternoon of November 18, 2009, Puig called Plaintiff and told him that Defendant wished to use the song as composed by Plaintiff in its marketing campaign. Later that day, Puig called Plaintiff again and said that David Bisbal and K'naan would sing the work, which would be titled "Wavin' Flag (Coca-Coca Spanish Celebration Mix)"

Plaintiff produced twelve mixes of the work over the next several weeks, and Defendant accepted the last mix and synchronized it to a video advertisement for use in Defendant's marketing campaign.   This final version included Plaintiff's Spanish lyrics, vocals, mixing and production, and it has been distributed world-wide.

Plaintiff continually attempted to have Universal and Defendant recognize his

2

producer credits and publishing rights in "Wavin' Flag (Coca-Coca Spanish Celebration Mix)".  Universal took the position that Plaintiff had created the work as a "work for hire".  Defendant claimed that it is free to use Plaintiff's work because of a license from Universal.  Plaintiff claims that Puig told him that Plaintiff has an ownership interest in the work, but that Plaintiff should relinquish his interest in deference to his relationship with Puig, Universal and Defendant.

The work was first published in Mexico, and Plaintiff has instituted criminal proceedings in Mexico against Defendant.  Defendant's defense is that Universal has licensed it to use the work.  On April 21, 2010, Plaintiff registered in Mexico the Spanish lyrics to "Wavin' Flag (Coca-Coca Spanish Celebration Mix)".  On April 28, 2010, Plaintiff registered the Spanish lyrics to "Wavin' Flag (Coca-Coca Spanish Celebration Mix)" with the United States Copyright Office (DE # 1).

On June 2, 2010, the District Court entered an Order granting in part Plaintiff's Motion for a Preliminary Injunction (DE # 31).[2]

The discovery deadline in this case was December 6, 2010.  The trial is set for February 14, 2011.

II. <u>Defendant's Motion for Protective Order</u>

Initially, Defendant contends that topics 1-7 listed in Plaintiff's notice of a Rule 30(b)(6) deposition are objectionable.[3]

A. <u>Topic 1</u>

This topic addresses Defendant's role in the creation of the Wavin' Flag Spanish

---

[2] Defendant's appeal from this Order (DE # 36), is currently pending.

[3] Defendant also object to Plaintiff noticing the deposition in Miami instead of in Atlanta (DE # 92 at 4-5).  In his response, Plaintiff agreed to hold the deposition in Atlanta (DE # 94 at 3, para. 6).

Celebration Mix (hereafter, "the Song"), and Acquisition of Rights for the Song.

Defendant contends that the term "Creation" is insufficiently specific, and that on November 4, 2010, Plaintiff deposed Joseph Belliotti, the employee with the most knowledge of choosing the English language version of "Wavin' Flag" as the core of the Song. Defendant asserts that it has produced all the agreements relating to the acquisition of rights for the Song and that the agreements speak for themselves. Defendant argues that any further discovery on this issue at this late point in the proceedings would be cumulative, duplicative, and otherwise obtainable from a more convenient, less burdensome or less expensive source (DE # 92 at 1).

This topic is set forth with particularity. It is based on the testimony at the November 4, 2010 deposition of Joseph Belliotti, a Coca-Cola employee who had submitted an affidavit supporting Defendant's opposition to Plaintiff's motion for preliminary injunction stating that he was involved in Defendant's use of the Song for World Cup marketing, and that the Song was produced in a number of languages (DE # 16-1). When, at the deposition, Belliotti was pressed for details concerning Plaintiff's work, Belliotti stated that he was not involved at all with Defendant's use of the Spanish language version of the Song. *See* DE # 94-2 at 4, (November 4, 2010 deposition of Joseph Belliotti at 39-41).

Defendant's objection is overruled. Even if Belliotti's testimony was relevant to Defendant's decision to use the Spanish language version of the Song, his testimony does not bind Defendant, and, so, does not satisfy Defendant's responsibility to provide binding testimony as to the decision to use the Spanish language version of the Song. *See Sabre v. First Dominion Capital, LLC*, 2002 WL 31556379 at *2 (S.D.N.Y. Nov. 15, 2002); *accord Foster-Miller, Inc. v. Babcock & Wilcox Canada*, 210 F.3d 1, 17 (1st Cir.

4

2000). Plaintiff wishes, and is entitled to depose Defendant's corporate representative with the most knowledge of the creation of the Song's Spanish version.

Furthermore, Defendant cannot rely on its document production to satisfy its obligation to produce a corporate representative on the issue of acquisition of rights for the Song. Plaintiff is entitled to decide what discovery it needs, and a Rule 30(b)(6) deposition is favored, as it allows a requesting party to obtain more complete information that a production of documents. *See Murphy v. K-Mart Corp.*, 255 F.R.D. 497, 506-07 (D.S.D. 2009).

B. Topic 2

This topic addresses Defendant's expenses incurred in utilization of the Song for Defendant's United States, Latin America and Spain Business segments, including: obtaining rights to use the Song; Production of the Song; and costs incurred via third party marketing agencies, such as the companies identified in Mr. Nigrinis' declaration.

The issue of whether Plaintiff's copyright infringement claim is limited to damages arising in the United States, or whether Plaintiff can claim damages for extra-territorial exploitation appears close, and is, in any event, not for the undersigned to decide. Defendant initially contends, relying on the District Court's statement in the Order granting in part the motion for preliminary injunction, that since the Court stated that it could not issue an injunction for infringement occurring outside the United States, (DE # 31 at 13, fn.), it follows that Plaintiff can not obtain damages in this case for infringement occurring outside the United States.

Plaintiff makes the argument that the availability of profits obtained from extra-territorial exploitation was not mentioned in the motion for preliminary injunction, and, in any event, would be available if the original act of infringement occurred in the United

States.  *See Sheldon v. Metro-Goldwyn Pictures, Corp.*, 106 F.2d 45, 52 (2d. Cir. 1939), *aff'd*, 309 U.S. 390 (1940); *accord L.A. News Serv. v. Reuters Tel Int'l, Ltd.*, 149 F.3d 987 (9th Cir. 1998), *mod.*, 340 F.3d 926, 930-32 (9th Cir. 2003).  Plaintiff contends that the Work was transmitted by Plaintiff, working in Miami, to Puig, working in Miami, who forwarded it to Atlanta to Umat Ozaydinli, Global Music Marketing Manager for Defendant (DE # 108 at 5-6).

        Defendant's objection to this topic is overruled.  Since it appears unclear as to where the infringement took place in this case, in the United States or in Mexico, Plaintiff is entitled to obtain from Defendant information that will assist Plaintiff in ascertaining what profits Defendant realized from extra-territorial exploitation of Plaintiff's work, as it may be admissible evidence or may lead to admissible evidence.  *See Palmer v. Braun*, 376 F.3d 1254, 1258 (11th Cir. 2004), *citing Sheldon*, *supra; P & D Int'l v. Halsey Pub. Co.*, 672 F.Supp. 1429, 1432-33 (S.D. Fla. 1987) ("to the extent that part of an act of infringement occurs within this country, although such act be completed in a foreign jurisdiction, those who contributed to the act within the United States may be liable under U.S. copyright law").  This ruling does not mean that any evidence obtained on this topic at a Rule 30(b)(6) deposition will be admissible at trial.  The ultimate decision regarding this issue will be made by the District Judge.

        As previously stated, Plaintiff is entitled to take a Rule 30(b)(6) deposition on an issue even Defendant has previously provided relevant information on that issue via interrogatory responses.

        Finally, the term "Business Segments", to which Defendant objects as too broad and insufficiently specific for it to be able to respond (DE # 92 at 8-9), is taken from Defendant's own public filings, which refer to "operating segments" and "business

units". *See* DE 94-3 at 5-6(pp. 31-32).  Thus, Defendant cannot be heard to say that this topic is too broad.

### C.  Topic 3

This topic addresses Defendant's Marketing utilizing the Song for Defendant's United States, Latin America and Spain Business segments, respectively, including: advertising and documentation concerning the use of the Song; Digital Downloads and Views of the Song; Online Advertising; and Maintenance of Digital Press Center.

In this topic, Defendant reiterates its arguments from Topic 2 concerning whether Plaintiff has a right to damages from extra-territorial utilization of the Song, and whether Plaintiff's use of the term "Business Segments" is too broad and insufficiently specific (DE # 92 at 9).  The undersigned will again reject these arguments for the reasons previously stated.

Defendant also objects to Plaintiff's use of the terms "documentation concerning Use of the Song" and "Maintenance of Digital Press Center" broad and insufficiently specific (DE # 92 at 9).  The undersigned finds that "documentation concerning Use of the Song" is straight forward and is not too broad.  Moreover, as Defendant points out, the term "Digital Press Center" comes from the November 5, 2010 deposition testimony of Miguel Nigrinis, an employee of Defendant (DE # 94 at 11; DE # 94-4 at 4-5 (Deposition at pp. 10, 11, 80)).  Therefore, these objections are overruled.

### D.  Topic 4

This topic addresses Defendant's Revenues for its United States, Latin America and Spain Business segments, respectively, including: Units sold and revenues earned; Units sold and revenues earned by Sale of Coke Units; Units sold and revenues earned by Sale of Coke Concentrate; and Data and Documents evidencing the foregoing.

In this topic, Defendant reiterates its argument from Topic 2 concerning whether Plaintiff has a right to damages from extra-territorial utilization of the Song (DE # 92 at 10).  The undersigned will again reject these arguments for the reasons previously stated.

While Defendant objects to the topic's failure to specify a time period (DE # 92 at 10), in his response, Plaintiff limits the topic to the period from 2008 to the present (DE # 94 at 12).

Again, Defendant objects that Plaintiff has not identified with reasonable particularity the terms "Units", "Coke Units" "Coke Concentrate", and "data and documents evidencing the foregoing" (DE # 94 at 12).  Again, these terms are taken from Defendant's own public filings, which distinguish between "sales of units" "sales of concentrate", and "sales of syrup".  *See* DE # 94-3 at 7-10 (pp. 38-41)).  Plaintiff seeks more detail concerning the profits realized by these business segments than is available in Defendant's public filings.  This is permissible, and Defendant's objection are overruled.

E.  Topic 5

This topic addresses Evaluation of the financial impact of marketing utilizing the Song for Defendant's United States, Latin America and Spain Business segments, respectively, including: Relationship between marketing campaign on contemporaneous sales revenues; Costs and impact on selling, general and administrative expenses of Coca-Cola United States; Profitability of Marketing Utilizing the Song in the United States; Public relations value of Campaign; Future Media Value of Campaign; and Public Relations Mentions of Campaign.

In this topic, Defendant reiterates its argument from Topic 2 concerning whether

Plaintiff has a right to damages from extra-territorial utilization of the Song and its argument from Topic 4 regarding "Business Segments" (DE # 92 at 11).  The undersigned again rejects these arguments for the reasons previously stated.

    **F.  <u>Topic 6</u>**

    This topic addresses the Indemnity Agreement between Defendant's and Universal.

    Defendant objects to producing a corporate representative to testify concerning the Indemnity Agreement, as it has already produced the agreement and will testify to its veracity.  Defendant contends that the agreement does not have any relevance to Plaintiff's claims against Defendant (DE # 92 at 11).

    Plaintiff asserts that the indemnity agreement is relevant to this case because he has learned, through discovery, that the agreement was executed after Defendant was aware of Plaintiff's interest in the Song and Defendant's continuing infringement (DE # 94 at 12-13).  Plaintiff believes that the evidence he may obtain could impeach Defendant's claim that any infringement was not willful (DE # 94 at 12-13).  Further, Plaintiff claims that Defendant's infringement is continuing.  Finally, Defendant cannot rely on its production of the agreement to refuse to provide a corporate representative on this topic (DE # 94 at 13).

    It appears that the circumstances surrounding the creation and execution of the indemnity agreement between Defendant and Universal Music may well be admissible evidence or lead to admissible evidence.  Furthermore, as previously stated, Plaintiff is entitled to take a Rule 30(b)(6) deposition on an issue even Defendant has previously provided relevant information on that issue via document production.  Therefore, Defendant's objections to this topic are overruled.

G.  **Topic 7**

This topic addresses Compliance with the Court's Order Granting in Part Plaintiff's Motion for Preliminary Injunction dated June 2, 2010.

Defendant objects to this topic because Defendant's in-house counsel and Defendant's outside counsel conducted Defendant's efforts to comply with the Order. Defendant also claims that this is not a live issue in the case, as Plaintiff has not claimed that Defendant has not complied with the District Court's Order (DE # 92 at 12).

Initially, Plaintiff has raised issues disputing Defendant's compliance with the District Court's Order.  *See* DE # 33; DE # 89-1 (Proposed Amended Complaint).  Indeed, Plaintiff claims that Defendant used the work in Spain as recently as November 4, 2010 (Ex. A to DE # 89, para. 23; DE # 108 at 6).  Therefore, this issue is live.  Next, Defendant cannot create an issue of privilege by using its counsel to conduct its efforts to comply with the Order.  If any issue of privilege arises, Defendant's counsel may make the appropriate objection.  Moreover, Nigrinis testified at his deposition that he participated in Defendant's compliance with the Order, but did not know who participated on behalf of the other business segments (DE # 94-4 at 3-4 (Deposition at pp. 8-11)). Plaintiff noted that Defendant's counsel did not raise any issues of privilege during this questioning and during his testimony, Nigrinis did not mention the involvement of either Defendant's in-house or outside counsel.  Therefore, Defendant's objections to this topic are overruled.

H.  **The Second Amended Rule 30(b)(6) Notice Is Timely**

In its reply supporting its Motion for Protective Order, Defendant contends that Plaintiff's Second Amended Rule 30(b)(6) notice is untimely (DE # 101 at 12-13). Defendant contends that it is simply unfair for Plaintiff to have set this deposition for the

last day of discovery (DE # 101 at 13).

Initially, Defendant may not raise this issue for the first time on discovery.  *See* Local Rule 7.1(c).  Moreover, Defendant has provided no reason that Plaintiff should not be able to notice a Rule 30(b)(6) deposition on any day during the discovery period, even the last day of the discovery period.

II. Plaintiff's Motion to Compel

A. The Motion is Not Untimely

Defendant asks this Court to deny as moot Plaintiff's motion to compel because the discovery deadline expired on December 6, 2010 (DE # 101 at 12).  In support of this proposition, Defendant also relies on the District Court's December 8, 2010 Order (DE # 105) in which it denied Plaintiff's motion for an extension of time to provide expert disclosures (DE # 106).[4]

The motion is timely.  It was filed on November 29, 2010 and deals with discovery requests made and responded to during the discovery period.  It is disingenuous for Defendant to contend that the instant motion is untimely because it did not become ripe until after the discovery cutoff.  The undersigned notes that Defendant provided Plaintiff with almost 1000 pages of discovery after the close of business on December 6, 2010 (DE # 108 at 1-3).

B. General Objections

Plaintiff objects to Defendant's general objections as violating Local Rule 26.1(g)(3)(A), as well as to Defendant's objections to specific requests that state that a discovery request is vague, overly broad or unduly burdensome, without providing any

---

[4] On December 16, 2010, Plaintiff filed a motion to reconsider the District Court's December 8, 2010 Order [DE # 105] (DE # 116).  This motion is pending.

detail (DE # 91 at 3).

Plaintiff's objections are sustained.   Nonspecific, boilerplate objections do not comply with Local Rule 26.1(g)3)(A) which provides, "Where an objection is made to any interrogatory or sub-part thereof or to any document request under Federal Rule of Civil Procedure 34, the objection shall state with specificity all grounds."

### C.  Requests for Production 11-15, 24-25

Request 11 asks for all documents exchanged between Defendant and FIFA pertaining to the display, publication or other use of Wavin' Flag, Wavin' Flag (Celebration) and/or Wavin' Flag (Spanish), in Defendant's global marketing campaign for the 2010 FIFA World Cup (DE # 91 at 4).

Request 12 asks for all documents exchanged between Defendant and Universal pertaining to the display, publication or other use of Wavin' Flag, Wavin' Flag (Celebration) and/or Wavin' Flag (Spanish), in Defendant's global marketing campaign for the 2010 FIFA World Cup (DE # 91 at 5).

Request 13 asks for all documents exchanged between Defendant and Octoscope pertaining to the display, publication or other use of Wavin' Flag, Wavin' Flag (Celebration) and/or Wavin' Flag (Spanish), in Defendant's global marketing campaign for the 2010 FIFA World Cup (DE # 91 at 5).

Request 14 asks for all documents exchanged between Defendant and and any third party (besides those identified in prior requests) pertaining to the display, publication or other use of Wavin' Flag, Wavin' Flag (Celebration) and/or Wavin' Flag (Spanish), in Defendant's global marketing campaign for the 2010 FIFA World Cup (DE # 91 at 5).

Request 15 asks for all documents pertaining to the display, publication or other

use of Wavin' Flag, Wavin' Flag (Celebration) and/or Wavin' Flag (Spanish), in

Defendant's global marketing campaign for the 2010 FIFA World Cup (DE # 91 at 5).

Request 24 asks for all documents pertaining to any remuneration Defendant has

received for any third-party' display, publication or other use of Wavin' Flag (Spanish), or

any work that is a derivative work, as defined in 17 U.S.C. 101 (DE # 91 at 6).

Request 25 asks for all documents pertaining to any remuneration Defendant has

received for any third-party's display, publication or other use of Wavin' Flag

(Celebration), or any work that is a derivative work, as defined in 17 U.S.C. 101 (DE # 91

at 6).

Defendant objected to each of these requests to the extent they sought

documents pertaining to uses outside the United States.  However, without waiving its

objection, Defendant produced documents labeled TCCC00000001 to TCCC00019454 as

non-privileged responsive documents within its custody or control (DE # 91 at 4-7).

Defendant's objections are overruled.  As has previously been stated in

connection with Defendant's motion for protective order, since it appears unclear as to

where the infringement took place in this case, in the United States or in Mexico, Plaintiff

is entitled to obtain from Defendant documents that will assist Plaintiff in ascertaining

what profits Defendant realized from extra-territorial exploitation of Plaintiff's work, as it

may be admissible evidence or may lead to admissible evidence.  This ruling does not

mean that any evidence obtained on this topic from documents discovery will be

admissible at trial.

Moreover, these documents are related to Nigrinis' declaration in opposition to

the motion for preliminary injunction, in which he stated that the Work was the "golden

thread" of Defendant's marketing campaign and stated a dollar amount for Defendant's

investment in the Work (DE # 91-4 at 4, 6-8, paras. 9, 18-19), and to Nigrinis' deposition in which he receded somewhat from his statements in the declaration (DE # 91-1 at 4, 7-8 (pp. 50-51, 65-66)).  The documents requested relate to Defendant's investments in and marketing of the Work both in the United States and worldwide, and are need to analyze Nigrinis' statements and to ascertain Plaintiff's damages.

Finally, Defendant should not have followed their objections with answers to the request.  It has become common practice for a Party to object and then state that "notwithstanding the above," the Party will respond to the discovery request, subject to or without waiving such objection.  Such an objection and answer preserves nothing and serves only to waste the time and resources of both the Parties and the Court.  Further, here, such practice leaves Plaintiff (and the Court) uncertain as to whether the request has actually been fully answered or whether only a portion of the question has been answered.  *See* Civil Discovery Standards, 2004 A.B.A. Sec. Lit. 18; *see also* Local Rule 26.1(g)(3)(A).

D.  <u>Requests for Production 26-27</u>

Request 26 asks for all documents pertaining to Defendant's distribution, display, publication and/or other use of Wavin' Flag (Celebration) (DE # 91 at 7).

Request 27 asks for all documents pertaining to Defendant's distribution, display, publication and/or other use of Wavin' Flag (Spanish) (DE # 91 at 7).

Defendant objected to both of these requests as overly broad and vague and ambiguous, and to the extent they sought documents pertaining to uses outside the United States.  However, without waiving its objection, Defendant labeled TCCC00000001 to TCCC00019454 as non-privileged responsive documents within its custody or control (DE # 91 at 7).

14

**Defendant's objections are overruled.**  Initially, Defendant's objections to Plaintiff's requests as "vague, overly broad, or unduly burdensome" are, without more, meaningless.  Defendant has not explained the specific and particular way in which Plaintiff's requests are vague, overly broad, or unduly burdensome.  *See* Fed.R.Civ.P. 33(b)(4); *Josephs v. Harris Corp.*, 677 F.2d 985, 992 (3d Cir. 1982) ("[T]he mere statement by a party that the interrogatory was 'overly broad, burdensome, oppressive and irrelevant' is not adequate to voice a successful objection to an interrogatory.  On the contrary, the party resisting discovery 'must show specifically how . . . each interrogatory is not relevant or how each question is overly broad, burdensome or oppressive.'" [citation omitted]).  If Defendant truly believed that these requests were vague, Defendant should have attempted to obtain clarification prior to objecting on this ground.  There is no evidence that Defendant has done so.  Therefore, Defendant's objections on these grounds are overruled.

Furthermore, as has previously been stated in connection with Defendant's motion for protective order, since it appears unclear as to where the infringement took place in this case, in the United States or in Mexico, Plaintiff is entitled to obtain from Defendant documents that will assist Plaintiff in ascertaining what profits Defendant realized from extra-territorial exploitation of Plaintiff's work, as it may be admissible evidence or may lead to admissible evidence.[5]  This ruling does not mean that any evidence obtained on this topic from documents discovery will be admissible at trial.

Finally, Defendant should not have followed their objections to these requests

---

[5] Defendant's citation of *Armstrong v. Virgin Records, Ltd.*, 91 F.Supp.2d 628 (S.D.N.Y. 2000), for the first time in its response to Plaintiff's motion to compel (DE # 101 at 7-8), does not change the analysis previously applied by the undersigned.  Since there is an issue as to where the infringement alleged in this case, Plaintiff is entitled to extra-territorial discovery.

15

with answers to the requests.  It has become common practice for a Party to object and then state that "notwithstanding the above," the Party will respond to the discovery request, subject to or without waiving such objection.  Such an objection and answer preserves nothing and serves only to waste the time and resources of both the Parties and the Court.  Further, here, such practice leaves Plaintiff (and the Court) uncertain as to whether the request has actually been fully answered or whether only a portion of the question has been answered.  *See* Civil Discovery Standards, 2004 A.B.A. Sec. Lit. 18; *see also* Local Rule 26.1(g)(3)(A).

     E.  <u>Requests 9 and 10</u>

     In Request 9, Plaintiff asked for all contracts, assignments of rights, memoranda of understanding and/or other documents showing any agreement between Defendant and Universal pertaining to Universal's obligation to indemnify Defendant for any claims made in this action, as stated in Defendant's initial disclosures dated August 12, 2010 (DE # 91 at 14).

     In Request 10, Plaintiff asked for all other documents pertaining to Universal's obligation to indemnify Defendant for any claims made in this action, or related actions, as stated in Defendant's initial disclosures dated August 12, 2010, not produced in response to a prior request (DE # 91 at 14).

     Defendant responded to both these requests by producing documents labeled TCCC00000001 to TCCC00019454 as non-privileged, responsive documents within its custody or control (DE # 91 at 14).

     Plaintiff objects that Defendant did not produce any correspondence or emails, such as demand for indemnification or notice of this action in its production.  Defendant stated that these documents were protected from discovery as work product and/or

pursuant to the Joint Defense Agreement.  Plaintiff notes that Defendant's privilege log did not reference and documents that were withheld pursuant to the Joint Defense Agreement or any communications with Universal employees concerning the indemnity agreement (DE # 91 at 15).

Defendant contends that it has produced all relevant, non-privileged responsive documents (DE # 101 at 3, 9-10).  Defendant also asserts that it did not need to list as work product on its privilege log any communications between Defendant and its counsel created after the commencement of the action because indemnification-related communications did not begin until after Plaintiff filed suit (DE # 101 at 11-12).

Plaintiff replies that he does not request documents related to the indemnity agreement created post-litigation, just documents related to the indemnity agreement which were created before this litigation was filed (DE # 108 at 8).

The undersigned orders Defendant to produce, on or before January 7, 2011, all documents related to the indemnity agreement which were created before this litigation was filed.  Since Defendant has not raised privilege as to any documents related to the indemnity agreement which were created before this litigation was filed, he may not do so now.

Therefore, for the reasons stated above, it is hereby

**ORDERED AND ADJUDGED** that Plaintiff's Motion to Compel Production and Further Responses (DE # 91), is **GRANTED**, and that Defendant's Emergency Motion to Strike Plaintiff's Second Amended Notice of Taking Deposition and Motion for Protective Order On Plaintiff's Second Amended Notice of Taking Deposition (DE # 92), is **DENIED**. On or before January 7, 2011, Defendant must provide Plaintiff with additional discovery, as stated in the body of the Order.  On or before January 14, 2011, in Atlanta, Georgia,

17

Defendant must provide a corporate representative(s) for deposition who is knowledgeable on the topics listed in Plaintiff's Second Amended Deposition Notice. The deposition shall be set for a date and time chosen by Plaintiff after consultation with Defendant.  However, Plaintiff shall have the final say as to the date and time of the deposition.

      **DONE AND ORDERED** in chambers in Miami, Florida, on December 27, 2010.

**ANDREA M. SIMONTON**
**UNITED STATES MAGISTRATE JUDGE**

**Copies furnished to:**
**All counsel of record**