IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF FLORIDA

Case No. 10-21418-CIV-MOORE/SIMONTON

RAFAEL "RAFA" VERGARA
HERMOSILLA,

    Plaintiff,

v.

THE COCA-COLA COMPANY,

    Defendant.

_____/

## ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

THIS CAUSE came before the Court upon Defendant's Renewed Motion for Summary Judgment (ECF No. 141). This Motion is now fully briefed.

UPON CONSIDERATION of the Motion, the Response, the Reply, and the pertinent portions of the record, and being otherwise fully advised in the premises, the Court enters the following Order.

### I. BACKGROUND

This case involves a claim by Plaintiff Rafael "Rafa" Vergara Hermosilla ("Vergara") to obtain damages and equitable relief for copyright infringement by Defendant The Coca-Cola Company ("Coca-Cola").[1]

In 2009, Vergara was hired by Coca-Cola to adapt the song "Wavin' Flag" by performer K'naan to include a verse of Spanish language lyrics in Coca-Cola's worldwide 2010 World Cup marketing campaign. These lyrics were to be sung by David Bisbal ("Bisbal"), a Spanish

---

[1] The facts are taken from the Parties' Statements of Undisputed Material Fact (ECF Nos. 142, 148).

language performer. Vergara's dealings were primarily with Jose Puig ("Puig"), the Vice-President of Marketing at Universal Music Latin America, who was working with Coca-Cola for the campaign. Around this time, Vergara, Puig and others discussed the possibility of Vergara receiving an adaptor's share[2] of the profits derived from the adaptation.

On November 17, 2009, Vergara adapted the lyrics to Spanish. While in some places the adaptation was a literal translation, in other places Vergara altered the words significantly while attempting to respect the concept, rhythm and melody of the existing song. Over the following months, a version of Wavin' Flag was produced using both the Spanish lyrics and some of the original English lyrics. A video promoting Coca-Cola was also made using the new version of the song.

On February 26, 2010, Vergara's request for an adaptor's share was denied. At that time, Vergara threatened to file a lawsuit to enforce his copyright of the lyrics. On March 4, 2010, Vergara told Coca-Cola that it could not use the adapted lyrics in his song unless he received an adaptor's share. That day, Puig and Vergara spoke on the phone regarding this dispute. During this conversation Puig asked Vergara to agree to relinquish any copyright interest in the work. Later that day, Vergara wrote an email to Puig seeking to resolve the dispute which stated in part:

> [B]ecause I am a man of my word and honor, that is not moved by economic motives, my only request is that my credits are respected as producer and adapter of the Spanish version (that every time the name of any composer of this version appears, my name appears as adapter), and obviously the credits for the production that are detailed in the invoice sent for this production, which I have detailed below.

---

[2] An "adapter's share" is a portion of the songwriter's profits. Thus, possessing it would confer revenue but is irrelevant to the question of whether a copyright is possessed.

2

> For the adaptation, you may consider it a work for hire with no economic compensation to that respect. I believe what's legal is a dollar.
>
> I hope that this leaves clear what my work was and what my good intentions were from the beginning.

Email from Vergara to Puig (Mar. 4, 2010) (ECF No. 148-1) (English translation). Puig responded to this email the next day with an email stating "Rafa, we are aware of your goodwill from the beginning, and most of all, we are aware of how hard you had to work given the little time we gave you. You can count on the credits on the track. I am resending you the contract." Email from Puig to Vergara (Mar. 5, 2010) (ECF No. 142-2) (English translation). Also that day, Puig sent draft agreements to Vergara that did not contain a provision for Vergara receiving credit.

> On March 8, 2010, Vergara sent another email to Puig stating,
>
> I appreciate your sending me the contracts. However, my proposal was clear and it was just that, a proposal, since you requested my help because you knew things had not been done right. My only request regarding said proposal was a series of things that are not included in what you sent me. Moreover, nothing of what I proposed to you is included in the contracts.
>
> I want you to know I'm very upset and rather disappointed, because my proposal was based more on our friendship than anything else, and what I got does not honor the agreements.
>
> Taking into account the above, I hereby inform you that the proposal of last Friday from which the contracts would supposedly derive is revoked as of now and without effect.

See Email from Vergara to Puig (Mar. 8, 2010) (English translation) (ECF 22-6). Also that day, Puig responded in an email stating, "I did not review the contracts. I will review them with the attorney right away and make any necessary changes. I'm sorry." See Email from Puig to Vergara (Mar. 8, 2010) (English translation) (ECF No. 22-6).

Shortly thereafter, this lawsuit commenced. Vergara's current Complaint alleges Coca-Cola's usage violates the Copyright Act, 17 U.S.C. § 501, et al, and thus Vergara is entitled to actual and statutory damages (Count I); Coca-Cola's profits (Counts II & III), and a permanent injunction (Count IV). Vergara claims he is entitled to worldwide relief.

## II. STANDARD OF REVIEW

The applicable standard for reviewing a summary judgment motion is stated in Rule 56(c) of the Federal Rules of Civil Procedure:

> The judgment sought should be rendered if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law.

Summary judgment may be entered only where there is no genuine issue of material fact. Twiss v. Kury, 25 F.3d 1551, 1554 (11th Cir. 1994). The moving party has the burden of meeting this exacting standard. Adickes v. S.H. Kress & Co., 398 U.S. 144, 157 (1970). An issue of fact is "material" if it is a legal element of the claim under the applicable substantive law which might affect the outcome of the case. Allen v. Tyson Foods, Inc., 121 F.3d 642, 646 (11th Cir. 1997). An issue of fact is "genuine" if the record taken as a whole could lead a rational trier of fact to find for the nonmoving party. Id.

In applying this standard, the district court must view the evidence and all factual inferences therefrom in the light most favorable to the party opposing the motion. Id. However, the nonmoving party "may not rest upon the mere allegations or denials of the adverse party's pleading, but the adverse party's response, by affidavits or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial." Fed. R. Civ. P. 56(e). "The mere existence of a scintilla of evidence in support of the [nonmovant's] position will be

insufficient; there must be evidence on which the jury could reasonably find for the [nonmovant]." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 252 (1986).

### III.   ANALYSIS

Coca-Cola claims that Vergara assigned his copyright interest in the adapted "Wavin' Flag" lyrics to Coca-Cola.

A copyright interest can be conveyed by a signed writing. 17 U.S.C. § 204. "[T]he chief purpose of section 204(a), (like the Statute of Frauds), is to resolve disputes between copyright owners and transferees and to protect copyright holders from persons mistakenly or fraudulently claiming oral licenses or copyright ownership." Imperial Residential Design, Inc. v. Palms Dev. Group, Inc., 70 F.3d 96, 99 (11th Cir. 1995). "No magic words must be included in a document to satisfy § 204(a). Rather, the parties' intent as evidenced by the writing must demonstrate a transfer of the copyright." Dellacasa, LLC v. John Moriarty & Assocs. of Fla., Inc., No. 07-21659-CIV, 2008 WL 299024, at *14 (S.D. Fla. Feb. 1, 2008) (quoting Radio Television Espanola, S.A. v. New World Enter., Ltd., 183 F.3d 922, 927 (9th Cir. 1999)). As Judge Kozinski phrased it:

> Section 204's writing requirement is not unduly burdensome; it necessitates neither protracted negotiations nor substantial expense. The rule is really quite simple: If the copyright holder agrees to transfer ownership to another party, that party must get the copyright holder to sign a piece of paper saying so. It doesn't have to be the Magna Charta; a one-line pro forma statement will do.

Effects Assocs., Inc. v. Cohen, 908 F.2d 555, 557 (9th Cir. 1990). Courts have found emails to constitute signed writings. See, e.g. Lamle v. Mattel, Inc., 394 F.3d 1355 (Fed. Cir. 2005); see also 15 U.S.C. § 7001(a)(1) ("a signature, contract, or other record relating to such transaction

5

may not be denied legal effect, validity, or enforceability solely because it is in electronic form").

Here, Vergara assigned the rights to his adapted lyrics. On March 4, 2010, Vergara and Puig had a telephone conversation in which Puig asked that Vergara allow Vergara's adaptation work to be considered "for-hire" and that any copyright interest Vergara possessed be transferred. See Vergara Dep. at 232 (ECF No. 142-3). Later that day, in response to this conversation, Vergara agreed to sell his rights to the lyrics for a dollar so long as he receive credit for his contribution. Vergara himself characterized this as a "proposal" made in response to the proposal Puig made over the phone. See Vergara Dep. at 232-35. On March 5, Puig wrote to him saying "You can count on the credits on the track." Email from Puig to Vergara (Mar. 5, 2010) (6:12 p.m.) (ECF No. 142-2, page 9 of 50); see also Vergara Dep. at 235. This is an unequivocal acceptance of Vergara's essential terms (his receiving credit) and at that moment the deal was made and irrevocable.[3] Puig's statement that "I am resending you the contract" does not alter the fact that an agreement had already been reached, as the essential terms of the contract had already been agreed on. See Lifecare Int'l., Inc. v. CD Med., Inc., 68 F.3d 429 (11th Cir. 1995) ("Simply because the parties contemplated the drafting of a subsequent formal, written contract, does not denote that they did not intend to be bound immediately."); WrestleReunion, LLC v. Live Nation Television Holdings, Inc., 2009 WL 2473686, at *5 (M.D. Fla. 2009) ("The relevant inquiry . . . is whether the parties agreed to all essential terms and intended to be bound."); E. Air Lines, Inc. v. Mobil Oil Corp., 564 F. Supp. 1131, 1145 (S.D.

---

[3] Courts have found receiving credit to be adequate consideration to support a copyright assignment. See, e.g., Bernstein v. Glavin, 725 N.E. 2d 455, 461 (Ind. App. 2000).

6

Fla. 1983) ("If parties so intend, a contract is binding from the time it is made even though the parties also agree that a formal writing embodying its provisions will subsequently be prepared."). Thus, Vergara assigned his copyright interest to Universal (who, in turn, assigned the copyright interest to Coca-Cola). Therefore, because Coca-Cola cannot be sued based on a copyright interest it owns, Coca-Cola is entitled to summary judgment on all counts.

Vergara, in arguing otherwise, relies heavily on the formal contracts that were emailed to him several hours after the agreement was reached. These did not reflect the terms of the earlier emails. Email from Puig to Vergara (Mar. 5, 2010) (7:03 p.m.) (ECF No. 142-2, page 11 of 50). While typically a counter-offer which is labeled an acceptance, but adds new terms, will not be binding, see Restatement (Second) of Contracts § 59 (1979), in this case a contract had already been formed by Puig's prior email. Thus, Puig's contracts only had the impact of an offer to modify an existing contract. Vergara rejected this offer, but this did not impact the initial agreement.[4]

Vergara also relies heavily on this Court's prior ruling granting a preliminary injunction. Vergara Hermosilla v. The Coca-Cola Co., 717 F. Supp. 2d 1297 (S.D. Fla. 2010). This reliance is misplaced. Findings "made at the preliminary injunction stage are often based on incomplete evidence." Thomas & Betts Corp. v. Panduit Corp., 138 F.3d 277, 292 (7th Cir. 1998). Here,

---

[4] Similarly, in some cases, "[a] purported revocation of acceptance may [] affect the rights of the parties. It may amount to an offer to rescind the contract or to a repudiation of it, or it may bar the offeree by estoppel from enforcing it." Restatement (Second) of Contracts § 63, comment (c) (1979). Here, however, the proposed new contract does not suggest that if it is rejected, Universal would repudiate the earlier contract.

7

the Court did not have before it the crucial email from Puig accepting Vergara's offer. Thus, this Order is not inconsistent with the Court's prior Order granting a preliminary injunction.[5]

## IV.   CONCLUSION

For the foregoing reasons, It is

ORDERED AND ADJUDGED that Defendant Coca-Cola's Renewed Motion for Summary Judgment (ECF No. 141) is GRANTED. The preliminary injunction previously granted (ECF No. 31) is LIFTED. All pending motions are DENIED AS MOOT. The Clerk of the Court is instructed to CLOSE this case.

DONE AND ORDERED in Chambers at Miami, Florida, this 23rd day of February, 2011.

*[signature]*
K. MICHAEL MOORE
UNITED STATES DISTRICT JUDGE

cc: All counsel of record

---

[5] This Court takes no position on the issue of whether Coca-Cola has, in all instances, provided adequate attribution to Vergara under the assignment contract formed by the March 4 and March 5 emails. Vergara's remedy for any such violation would be a claim for breach of contract, and no such claim is properly before this Court.